IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIAN TULLY,

    Plaintiff,

v.

DR. LYNN PITTMAN[1] and
DR. DEANNA BROOKHART,

    Defendants.

Case No. 3:19-CV-0820-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the motion for summary judgment filed by Defendant Dr. Lynn Pittman, M.D. (Doc. 68), the motion for summary judgment filed by Defendant Dr. Deanna Brookhart, Ph.D. (Doc. 88), and the motion for reconsideration by Plaintiff Brian Tully (Doc. 91). For the reasons set forth below, both motions for summary judgment are granted, and Plaintiff Tully's motion is denied as moot.

## INTRODUCTION

On July 29, 2019, Plaintiff Brian Tully, an inmate in custody of the Illinois Department of Corrections, filed this action *pro se* pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence") (Doc. 1). Tully's allegations relate to medical treatment regarding his shoulder pain and Defendants' failure to schedule shoulder replacement surgery (*Id.*). Initially, Defendant Dr. Pittman and Defendant Dr. Brookhart both asserted

---

[1] The Clerk's Office is **DIRECTED** to correct Defendant's name on the docket to Dr. Lynn Pittman.

an affirmative defense regarding Tully's failure to exhaust his administrative remedies, but each defendant subsequently withdrew this defense, and Tully is proceeding on his claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment (Docs. 45, 46, 47). Dr. Pittman, a former Wexford Health Services, Inc. employee and Director of Medicine at Lawrence, was Tully's treating physician for four months at Lawrence (Docs. 1, 72-1). Dr. Brookhart is named as a defendant only in her official capacity as Warden of Lawrence for purposes of securing injunctive relief, if warranted (Docs. 1, 7, 27).

On February 12, 2021, Dr. Pittman filed a motion for summary judgment (Doc. 68). After Dr. Pittman filed this motion, the Court ordered Tully to submit to the completion of his deposition and allowed Dr. Pittman to supplement her motion for summary judgment (Doc. 80). On May 27, 2021, Dr. Pittman filed a supplement to her motion for summary judgment (Doc. 85). On June 10, 2021, Tully filed a response opposing the motion for summary judgment and its supplement (Doc. 92). On May 28, 2021, Dr. Brookhart also filed a motion for summary judgment (Doc. 88). Tully did not file a response to this motion.[2]

In her motion for summary judgment, Dr. Pittman argues that Tully's claims are unsupported by evidence. Dr. Pittman states that the evidence demonstrates the opposite of deliberate indifference in that: she provided reasonable and appropriate care to Tully; Tully was never approved for total shoulder replacement surgery; and she did not

---

[2] Pursuant to Local Rule 7.1(c), Plaintiff's lack of a response could be interpreted as an admission of the merits of the motion.

incorrectly schedule his physical therapy (Docs. 68, 69, 80). In Dr. Brookhart's motion for summary judgment, she argues that Tully is not entitled to injunctive relief, and Tully's claim against her, in her official capacity as Warden of Lawrence, is barred by sovereign immunity.

On June 2, 2021, Tully filed a motion asking the Court to reconsider its prior decisions not to appoint counsel for him. In denying Tully's previous motions for counsel, the Court noted that Tully is competent and able to litigate this matter, and his claims are not particularly complex (See, e.g, Doc. 80).

## FACTUAL BACKGROUND[3]

Prior to incarceration, in February 2017, Tully received partial shoulder surgery (Docs. 1, 7). Two months later, he reinjured his shoulder and visited a specialist who recommended that the shoulder be replaced (*Id.*). Tully did not receive the surgery as he was arrested later that month (*Id.*). He notified medical staff of increased pain and reduced mobility in his shoulder upon his admission at Lawrence in March 2018 (Doc. 1; Doc. 69-1, pp. 257-63). In response to his left shoulder pain, Tully was prescribed Tylenol, ordered to participate in therapy, and ordered to receive x-rays (Doc. 69; Doc. 69-1, p. 263; Doc. 69-3, pp. 21-22). Additionally, the medical staff requested Tully's medical records from his previous provider (Doc. 69-1, p. 262).

---

[3] These facts are undisputed by the parties, even though Tully initially contended that a total shoulder replacement surgery had been authorized and that Dr. Pittman mistakenly scheduled physical therapy for his back instead of his shoulder. Through his deposition testimony, Tully conceded and acknowledged that he incorrectly perceived these events.

Tully persisted in his complaints of shoulder pain to Lawrence medical staff. In April 2018, during an evaluation for an ear infection, Tully complained of ongoing shoulder pain, and a nurse practitioner recommended follow-up with the doctor (Doc. 69; Doc. 69-2, p. 8; Doc. 69-3, pp. 28-29). Five days later, a physician at Lawrence, Dr. Ahmed, evaluated Tully and made a referral for Tully to be assessed by an orthopedic specialist (Doc. 69; Doc. 69-1, p. 9; Doc. 69-3, pp. 29-30). Dr. Ahmed's referral request was subsequently denied in collegial review because Tully's outside medical records regarding his left shoulder had not yet been received (Doc. 69-2, pp. 11, 114).

Once Tully's medical records were received on May 16, 2018, the referral decision was appealed (Doc. 69-2, p. 19). On May 25, 2018, the appeal was approved, and Tully was authorized to see an orthopedic specialist for evaluation (Doc. 69-2, pp. 21, 116). Tully testified that he believed this authorization was actually an approval for surgery because it stated, "Ortho Eval for total left shoulder replacement re-presented in collegial with the past records. Per 7/20/17 Ortho notes: . . . Recommended to proceed with conversion to left total shoulder replacement versus left reversed total replacement." In his deposition, however, Tully admitted that he misunderstood the document and that he was simply approved to see the orthopedic specialist, not for surgery (Doc. 69-3, p. 52).

The following month, Tully visited Brian Cummings, a Physician's Assistant at Carle Sports and Rehabilitation Center, who recommended a CT scan and aspiration[4] of

---

[4] Aspiration is a medical procedure to drain fluid from the space around a joint to diagnose and determine the nature and severity of a patient's condition. *Joint Aspiration*, JOHNS HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/joint-aspiration (last visited Sept. 27, 2021).

Tully's left shoulder (Doc. 69; Doc. 69-2, pp. 26, 122; Doc. 69-3, p. 53). However, PA Cummings did not approve or recommend a left shoulder replacement surgery for Tully at that time (Doc. 69-2, p. 140; Doc. 69-3, p. 55). Rather, PA Cummings noted, "[i]f referring [Tully] to a surgeon, patient must have had a CT/MRI, Physical Therapy, and Injection(s), [i]f patient has not had the required CT/MRI within the past 6 months, patient will be scheduled with a nonsurgical provider" (Doc. 69-2, p. 124).

After the specialist's evaluation, in July 2018, Tully met with Dr. Ahmed for a follow-up appointment, and Dr. Ahmed again authorized a request for referral for a left shoulder replacement surgery (Doc. 69; Doc. 69-2, p. 135). The request for surgery was not approved, but Tully was approved to receive the CT scan and aspiration recommended by PA Cummings (Doc. 69-2, pp. 40, 142). In August 2018, Tully was scheduled for a CT scan and aspiration (Doc. 69-2, p. 47; Doc. 69-3, pp. 67-68). Before obtaining any results, Dr. Ahmed met with Tully again and made another referral for Tully's total shoulder replacement surgery (Doc. 69-1, p. 53). Dr. Ahmed's request for referral was denied by Dr. Ritz in collegial review (Doc. 69-2, p. 58). In September 2018, while Dr. Ahmed and Tully reviewed the CT scan, they discussed the collegial review denial (Doc. 69-2, p. 66; Doc. 69-3, pp. 78-80). Tully subsequently requested a follow-up examination with an orthopedic specialist in November 2018, which was denied awaiting the shoulder aspiration results (Doc. 69-2, p. 105). In his deposition testimony, Tully acknowledged that the medical record he originally perceived to be approval for shoulder replacement surgery was approval for an orthopedic surgeon to evaluate his shoulder (Doc. 69-3, pp. 46-51).

In February 2019, Dr. Pittman examined Tully for the first time (Doc. 69-1, p. 11). Among several other health issues, Tully reported left shoulder pain and back pain, and he requested a follow-up with the orthopedist (*Id.*). In response to this request, Dr. Pittman referred Tully to visit the orthopedist for an evaluation of his shoulder. She also renewed both his low bunk and low gallery permits for one year, prescribed him medications, and recommended a follow-up in four weeks (*Id.*). About four weeks later, Tully discussed the persistence of his left shoulder pain with Dr. Pittman. Tully also mentioned that his surgery had not been scheduled, and Dr. Pittman informed Tully that "there was nothing she could do" other than extend his physical therapy (Docs. 1, 7). In response, she ordered Tully to undergo four weeks of physical therapy (Doc. 69-1, p. 15).

On April 17, 2019, at the physical therapy evaluation, Tully had his back examined, not his shoulder. In deposition testimony, Tully conceded that Dr. Pittman correctly ordered physical therapy for his shoulder (Doc. 69-3, p. 16) and that he previously complained of back pain to Dr. Pittman, which the physical therapy helped relieve (Doc. 85-1, p. 107). On April 26, 2019, Dr. Pittman ordered an x-ray of Tully's left shoulder to be reviewed by an orthopedic surgeon (Doc. 69-1, p. 25). On May 1, 2019, an x-ray of Tully's left shoulder was taken (Doc. 69-1, p. 31). Dr. Pittman evaluated Tully on May 13, 2019, for a separate health concern that Dr. Pittman treated (Doc. 85-1, p. 108). On May 29, 2019, Tully's physical therapy ended. After the x-ray, on July 5, 2019, Tully visited Dr. Pittman one last time before filing this action for issues unrelated to his shoulder (Doc. 85-1, p. 111).

On July 29, 2019, Tully filed his Complaint (Doc. 1). At the time of his Complaint, no surgery for left shoulder replacement surgery was scheduled (Docs. 1, 7). The Warden of Lawrence Correctional Center, Dr. Deanna Brookhart, was added as a defendant in her official capacity only in order to carry out any injunctive relief necessary should Tully prevail.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. The party opposing summary judgment must offer admissible

evidence in support of his version of events; hearsay evidence does not create a genuine issue of material fact. *Durling v. Menard, Inc.*, No. 18 C 4052, 2020 WL 996520, at *2 (N.D. Ill. Mar. 2, 2020) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 484 (7th Cir. 1996)). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

## II. <u>Eighth Amendment Deliberate Indifference</u>

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974)); *see also, Gaston v. Ghosh*, 11-CV-6612, 2017 WL 5891042, at *11 (N.D. Ill. Nov. 28, 2017) (denial of authorization for MRI after collegial review was not deliberate

indifference). "[T]he Eighth Amendment does not reach disputes concerning the exercise of a professional's medical judgment, such as disagreement over whether one course of treatment is preferable to another." *Gaston*, 2017 WL 5891042, at *11, citing *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017).

To succeed on a claim of deliberate indifference, a plaintiff must show: (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)).

A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014)) (internal quotation marks omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") (internal quotation marks omitted) (emphasis added).

Prevailing on the second prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. A plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly

disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did," *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016))(alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

### III. <u>Injunctive Relief</u>

For injunctive relief, a plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). As to the first element, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).

## ANALYSIS

### I. <u>Deliberate Indifference Claim against Defendant Dr. Lynn Pittman</u>

Here, there is insufficient evidence to allow a reasonable juror to conclude that Dr. Pittman was deliberately indifferent to Tully's shoulder pain. Dr. Pittman concedes Tully's left shoulder pain could qualify as an objectively serious medical need. While not life-threating, Tully's shoulder pain did cause several physicians, including Dr. Pittman, to provide treatment and evaluate the issue further. Moreover, it is possibly the type of condition that would result in further significant injury or pain if left untreated. This qualifies as a serious medical condition for purposes of the Eighth Amendment analysis.

Under the second prong of the deliberate indifference analysis, Tully must show that Dr. Pittman knew of and subsequently disregarded an excessive risk to his health. Tully has not made such a showing. Dr. Pittman had four visits with Tully over the course of four months before Tully filed this suit. Dr Pittman listened to Tully's complaints of

shoulder pain and ordered treatment whenever Tully raised concerns with his shoulder. Dr. Pittman treated his pain by renewing his low gallery and bunk permit orders, prescribing pain medication, ordering physical therapy, and obtaining an x-ray of his shoulder.

Initially, Tully alleged that Dr. Pittman did not schedule a total shoulder replacement surgery for which he had prior authorization. But Tully's medical records indicate that he was never approved for any surgery, and Tully could not provide any evidence to the contrary. During his deposition, Tully conceded that he confused an approval for evaluation by an orthopedic specialist as an approval for surgery. Tully also alleged that Dr. Pittman incorrectly ordered physical therapy for his back, not his shoulder. In deposition testimony, however, Tully stated that Dr. Pittman correctly ordered physical therapy for his shoulder, though it was performed only on his back. Further, his testimony revealed that Tully complained of back pain to Dr. Pittman, which the physical therapy was also meant to treat. Even if Dr. Pittman mistakenly ordered physical therapy for Tully's back instead of his shoulder, this alone does not rise to the level of deliberate indifference, as more than mere negligence is required. While Tully's desired treatment—a total shoulder replacement surgery—was never ordered, he was nonetheless treated for his shoulder pain. Dr. Pittman also ordered investigatory procedures, like the x-ray, to understand the source of Tully's pain.

Based on these facts, no reasonable jury would find that Dr. Pittman intentionally or recklessly disregarded a risk to Tully's health. Instead, the evidence indicates that Dr. Pittman exercised professional judgment in choosing the best course of treatment, such

as pain medication and physical therapy, for Tully's chronic shoulder pain while continuing to investigate the source of the pain by obtaining an x-ray. On this record, the Court finds that Dr. Pittman is entitled to summary judgment on Tully's deliberate indifference claim.

## II. Request for Injunctive Relief against Defendant Dr. Deanna Brookhart

Defendant Dr. Brookhart was added to this action in her official capacity as the Warden of Lawrence Correctional Center solely for purposes of carrying out any injunctive relief ordered in this case. Because no reasonable jury would find that Dr. Pittman intentionally or recklessly disregarded a risk to Tully's health, there is no basis for injunctive relief in this suit.

### CONCLUSION

For these reasons, the motions for summary judgment filed by Defendants Dr. Lynn Pittman (Doc. 68) and by Dr. Deanna Brookhart (Doc. 88) are **GRANTED**. Accordingly, the motion for reconsideration filed by Plaintiff Brian Tully (Doc. 91) is **DENIED as moot.** The Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

DATED:  September 27, 2021

*[signature]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**